STATE OF MAINE                                          SUPERIOR COURT
PENOBSCOT, ss.                                          CIVIL ACTION
                                                        DOCKET NO. CV-16-056
                                                        WRA- PEN- 12/9/2016

AIMEE J. HATT AND SCOTT E.
DIONNE,

        Plaintiffs,

        v.                                              **DECISION ON M.R. CIV.
                                                        P. 56 MOTION FOR
                                                        SUMMARY JUDGMENT**

C&A FINANCIAL PROGRAMS, INC.,
AND RICHARD D. DORR

        Defendants.


        This matter comes before the court on Defendant C&A Financial Programs, Inc.'s

("C&A") motion for summary judgment filed pursuant to M.R. Civ. P. 56. Having

reviewed the parties' submissions and the pertinent statutory provisions involved in this

litigation, the Court grants the motion.

                                        BACKGROUND

        From the Court's review of the pleadings and the parties' respective statements of

material facts, the following facts are undisputed unless stated otherwise. On November

1, 2006, the plaintiffs agreed to purchase a 1997 Liberty Mobile Home from Defendant

Richard Dorr for a price of $37,500. (Compl. ¶ 5.) In order to acquire the mobile home,

the Plaintiffs gave Dorr a mortgage note secured by a first-mortgage in the amount of

$70,000.00 upon a certain parcel of real property owned by Plaintiff Aimee Hatt—the

property where the mobile home was to be delivered by Defendant Dorr, 2945 Kennebec

Road in Newburgh, Maine. The plaintiffs paid a $5000.00 down payment for the mobile

1

home and Dorr, as part of the mortgage, agreed to: (1) pay off the obligation secured by an existing first mortgage on the Newburgh property where the mobile home was to be placed; (2) pay contractors for installation of a trailer pad, septic system, well and water line on the property; (3) pay for moving and setting up the mobile home at the Newburgh property; and (4) pay closing costs incurred in the transaction. (Comp. ¶ 6; Hatt Aff. ¶ 4; *see also* C&A Supp. S.M.F.¶ 12, Ex. B).

The parties do not dispute that C&A Financial is a business generally engaged in the purchasing of financial obligations, or interests in financial obligations, including residential and commercial mortgage loans, land contracts, contracts for deed, annuities, settlements, lottery contracts, and other sources of payments commonly referred to as "notes." (C&A Supp. S.M.F. ¶ 6; Christenson Aff. ¶ 3.) C&A deals with a wide variety of sellers of financial obligations located throughout the United States and ordinarily purchases these financial obligations at a discount from their face value. (C&A Supp. S.M.F. ¶ 7.) After C&A purchases an interest in a particular note, C&A will usually be the party that collects payments coming due under the terms of the obligation, enforces the terms of the obligation, and realizes the collateral, if any, upon default. (*Id.* ¶ 8.)

At some point, either before or shortly after November 1, 2006, Defendant Dorr engaged Defendant C&A Financial to make him an offer to purchase all, or part of an interest in, the Dorr/Hatt transaction. (C&S Supp. S.M.F. ¶ 9.) Whether Defendant Dorr contacted Defendant C&A Financial prior to the November 1, 2006, "closing" date of the Dorr/Hatt transaction is the principle fact disputed by the parties in this action. Defendant C&A Financial claims that Dorr contacted the firm in "the last half of November and the first half of December 2006." (Christenson Aff. ¶ 4; C&A Supp.

2

S.M.F. ¶¶ 9-10.) The Exclusive Option to Purchase Agreement, as between Dorr and C&A Financial, which purports to initiate a relationship between C&A and Dorr, appears to have been executed by Dorr and C&A Secretary, Linda Christenson, on November 1, 2006. (C&A Supp. S.M.F. Ex. C.) C&A maintains that the date "was inserted by Mr. Dorr when he received the Option form in blank when C&A sent it to him on December 11, 2006, and was signed by C&A on a later date." (Def. C&A's Reply Mem. in Support of M. for Summ. J. at 6.) The Plaintiffs use the November 1, 2006 date as evidence that Dorr contacted C&A before execution of the mortgage note and presumably had a plan in place to transfer some interest in the mortgage on or before "closing" – or, November 1, 2006 (See Pl.'s Opp. S.M.F. ¶¶ 9-10, 17 and 19.) The parties agree that the purchase of the mobile home and financing for other services referenced in the mortgage deed was on credit, but disagree about whether the "credit" was advanced by Dorr or C&A. (Compare C&A Supp. S.M.F. ¶ 18 with Pl.'s Opp. S.M.F. ¶ 18.)

What followed in the wake of Defendant Dorr's engagement of C&A is not in dispute. On December 11, 2006, Defendant C&A mailed a transaction purchase package to Defendant Dorr. The contents of that packet included C&A's first offer to purchase part of the Hatt/Dorr transaction for $56,000, less the underlying lien. (Pl.'s Opp. S.M.F ¶ 20; C&A Rep. S.M.F. ¶ 20.) On December 26, 2006, Defendant C&A received the signed and completed documents in the package. While C&A was processing the proposed assignment, C&A telephoned Plaintiff Aimee Hatt on January 5, 2007 to check on the status of her transaction with Defendant Dorr. (C&A Supp. S.M.F ¶ 23; Pl.'s Opp S.M.F. ¶ 23.) On that date, Ms. Hatt advised C&A that none of the funds that were the subject of the November 2006 mortgage transaction had been disbursed to upgrade the mobile

3

home, or the property,[1] consistent with the agreement between Defendant Dorr and the Plaintiffs. (C&A Supp. S.M.F ¶ 24; Pl.'s Opp. S.M.F. ¶ 24.) Due to this development—chiefly, Defendant Dorr's apparent failure to forward the monies needed to prepare the Plaintiffs' property and upfit the mobile home—C&A later agreed, after a conversation with Defendant Dorr, that it would withhold a portion of the payment for an interest in the Mortgage Note sufficient to pay the outstanding debts for work completed and that C&A would ultimately pay for the work directly. (C&A Supp. S.M.F ¶ 26; Pl.'s Opp. S.M.F. ¶ 26.)

On February 6, 2007, Defendant Dorr accepted C&A's offer to purchase 180 payments on the Mortgage Note for a discount price of $35,000 and the parties executed loan documents memorializing this agreement on the February 7, 2007.[2] (C&A Supp. S.M.F ¶ 28; Pl.'s Opp. S.M.F. ¶ 28.) On February 9, 2007, C&A delivered a check to Defendant Dorr in the amount of $13,221.01, which reflected 180 payments on the mortgage note less the $11,000.00 paid to D&D construction for work done to prepare the Plaintiffs' Newburgh property for delivery of the mobile home, $3,628.57 paid to Alfred C. Haskell Water Wells, Inc. for well work, $6,750.00 paid to McPherson Timberlands for the amount owed on the obligation secured by a prior mortgage on the property, $382.42 for taxes, and $18.00 for recording fees. (C&A Supp. S.M.F. ¶ 33; Pl.'s Opp S.M.F. ¶ 33.) At this point the parties do not dispute that Defendant Dorr dispersed no monies associated with the November 2006 transaction, and that C&A

---

[1] Among the outstanding debts owed by Dorr as a result of the November 1, 2006 mortgage transaction was a $7000.00 amount intended to help the Plaintiffs to pay off the remainder of a prior mortgage on the property, a bill in amount of $3,628.57 for construction of a water well on the property, a bill in the amount of $11,000.00 for the preparation of the property, delivery and placement of mobile home, and the amount needed to make the first payment on the Mortgage Note. (C&A Supp. S.M.F. ¶ 24; Pl.'s Opp. S.M.F. ¶ 24; see C&A Supp. S.M.F. Ex. B.)

[2] The documents include a Revised Purchase and Proceeds Agreement as well as a Partial Purchase Agreement. (C&A Supp. S.M.F ¶ 29, Ex. C; Pl.'s Opp S.M.F. ¶ 29.)

basically financed the entire November 1, 2006 Dorr/Hatt transaction post-assignment by paying the various creditors involved in the delivery of the mobile home. C&A remains the owner of 180 payments outstanding under the terms the Mortgage Note and the Plaintiffs in this action have not made the payment due as of August 1, 2009. (C&A Supp. S.M.F. ¶ 35; Pl.'s Opp. S.M.F. ¶ 35.) Whether C&A can be held liable for sums expended toward payments made on the mortgage note, finance charges, and attorneys fees, as assignee, under the Truth-in-Lending provision of the Maine Consumer Credit Code, 9-A M.R.S. § 8-209, and whether the Plaintiff may otherwise rescind the November 1, 2006 transaction are the principle issues before the Court on Defendant C&A's M.R. Civ. P. 56 Motion for Summary Judgment.

### STANDARD OF REVIEW

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825. A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Id.*; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. The court will review the evidence in the light most favorable to the non-moving party. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276, 281.

*DISCUSSION*

A. Truth-in-Lending

The Plaintiffs' primary argument in contesting the instant motion for summary judgment rests on the premise that C&A, and not co-defendant Dorr, was the actual "creditor" for the purposes of seeking liability under the Maine Consumer Credit Code—Truth-in-Lending ("Code") provision. For the reasons that follow, the Plaintiffs' position fails to withstand analysis.

The Code contained only one definition of the term "creditor" at the time Plaintiffs consummated their transaction with Defendant Dorr.[3] *See* 9-A M.R.S. § 1-301(17)(A)-(B) (2007). As of 2006, the term "creditor" was pervasive throughout the statute, and generally defined that class of persons (or entities) that might assume liability for purported violations of the Code's requirements. At the time the Plaintiffs executed the mortgage note, the Code defined "creditor" as a person who "regularly extends credit in consumer credit transactions" *and* "is the person to whom the debt arising from the consumer credit transactions is initially payable on the face of the evidence of indebtedness." *See* 9-A M.R.S. § 1-301(17)(A)-(B) (2007) (emphasis added).

Construing 9-A M.R.S § 1-301(17)(A)-(B) (2007) according to its plain meaning, The Court does not consider C&A to fall within the definition of "creditor" effective at the time of the Hatt/Dorr November 2006 transaction. While there may be evidence to

---

[3] In 2007, the Legislature undertook extensive revisions to the Code, including the addition of a "creditor" definition specific to 9-A M.R.S § 8-103. *See* P.L. 2007, ch. 273, § A-4 (effective January 1, 2008) ("Creditor has the same meaning as 'lender' as set forth in 24 Code of Federal Regulations, Section 3500.2 and includes a mortgage broker."). In 2009, the Legislature again recast the definition found in 9-A M.R.S § 8-103 to provide that the term "'[c]reditor has the same meaning as set forth in section 1-301, subsection 17, and in addition includes those entities defined as lender as set forth in 24 Code of Federal Regulations, Section 3500.2 and includes a mortgage broker." P.L. 2009, ch. 362, § A-1. The Court need not concern itself with the subsequently enacted provisions of the Coide for the purposes of deciding this motion and will analyze those provisions Code in force and effect at the time of the November 1, 2006 Dorr/Hatt transaction.

generate a genuine issue of material fact concerning whether C&A "regularly extends credit in consumer credit transactions," considering C&A's business model, (C&A's Supp. S.M.F. ¶¶ 6-8), there is no evidence to suggest that C&A is "the person [or entity] to whom the debt was initially payable on the face" of November 1, 2006 mortgage note. As Defendant Dorr was the only party named on the mortgage note signed by Plaintiffs, he is the person to whom the debt was initially payable on the face of the indebtedness, and thus the only party who could potentially be considered a "creditor," if at all, pursuant to § 1-301.[4] *See also Reagan v. Recal Mortgage, Inc.*, 135 F.3d 37, 41 (1st Cir. 2005) (noting, in the context of defining the phrase "'making a loan,' . . . that a loan is 'made' by the named creditor even when the funds are actually provided by a third party").

Whether C&A assumes liability, as assignee of the mortgage note, by operation of 9-A M.R.S. § 8-209, as alleged in the Plaintiffs March 2009 Complaint, is contingent upon whether Dorr, individually, can be considered a "creditor" within the ambit of the Code. Although the November 2006 Note references Defendant Door as the person to "whom the debt was initially payable on the face of the indebtedness," 9-A M.R.S. § 1-301(17)(B), there is no evidence in the summary judgment record indicative of whether Defendant Dorr "regularly extend[ed] credit in consumer credit transactions," 9-A M.R.S. § 1-301(17)(A). That is, there is no evidence in the summary judgment record to suggest that Defendant Dorr extended credit in a consumer credit transaction more than "25 times, or more than 5 times for transactions secured by a dwelling" in either 2005 or 2006. 9-A M.R.S. § 1-301(17)(B).

---

[4] The Court specifically addresses whether Defendant Dorr is a "creditor" within the meaning of the Consumer Credit Code immediately below.

Although the 9-A M.R.S. § 8-209 provision specifically allows plaintiffs to maintain a cause of action under the Code against creditors and assignees alike where "the violation . . . is apparent on the face of the disclosure statement,"[5] the Code provides no substantive basis for defining Dorr as a creditor. Because the Court cannot construe the language of the Code to embrace Dorr as a "creditor,"[6] under any definition of the term operative at the time of the November 2006 Hatt/Dorr transaction, C&A cannot be liable for purportedly failing to make certain disclosures under the Code, as assignee, where the strictures of the Code simply do not apply. See 9-A M.R.S. § 8-201 (2007). The Plaintiff's Truth-in-Lending claim as against Defendant C&A thus fails as a matter of law.

---

[5] See also 9-A M.R.S. § 8-209(5)(A)(i) (providing that assignees may be liable to the same extent as creditors in consumer credit transactions secured by real property only if the violation is apparent on the face of the disclosure statement provided in connection with the transaction and the assignment is voluntary).

[6] To the extent "high rate, high fee mortgage" protections might be implicated on the facts alleged in the Plaintiffs' complaint, 9-A M.R.S § 1-301(17) further establishes as a "creditor" "any person who originates 2 or more high-rate, high-fee mortgages ... in any 12-month period or an person who originates one or more such mortgages through a loan broker as defined in Article 10 of this Act in any 12-month period." At the time of the November 2006 Hatt/Dorr transaction, a "high-rate, high-fee mortgage" was specifically defined in 9-A M.R.S. § 8-103(F-1) as "a consumer credit transaction, involving real property located within this State, that is considered a 'mortgage' under Section 152 of the federal Home Ownership and Equity Protection Act of 1994, . . . [15 U.C.S. § 1602(aa)] and subject to the regulations adopted pursuant thereto by the Federal Reserve Board, including [12 C.F.R. § 226] . . .and the official staff commentary to the regulations as each may be amended from time to time." Both 15 U.S.C. §1602(aa)(1) and 12 C.F.R. § 226.32(a)(2)(i) exempt from "high-rate, high fee mortgages" those transactions that qualify as "residential mortgage transactions," which are defined in 15 U.S.C. §1602(w) and in 9-A M.R.S. § 8-103(H) as "transactions in which a mortgage, deed of trust, purchase money security interest . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." See also U.S.C. § 1602(v) (including mobile homes among the definitions of the term "dwelling"). Because the Plaintiffs cannot dispute that the November 1, 2006 transaction involved the purchase of a dwelling (in this case, the 2001 Liberty mobile home), and constituted a "residential mortgage transaction," the Court agrees with Defendant C&A's position that "the transaction is excluded from the Code's definition of a 'high-rate, high-fee mortgage.'" (C&A Mot. Summ. J. 10.) The Plaintiffs prayer for rescission falls on similar grounds. Section 8-204(5)(A) of the Code specifically excludes "residential mortgage transactions" from the types of mortgage transactions that can be rescinded under certain circumstances. See generally 9-A M.R.S. § 8-204.

## II. RESPA

Count II of the Plaintiffs' Complaint raises the additional issue of whether C&A had any obligation to provide a "settlement statement" consistent with dispersing funds to the Plaintiffs in a "table-funded" transaction some three months after the Plaintiffs signed the mortgage documents with Defendant Dorr. The Court discusses these claims, intertwined with each other, in turn.

In opposing C&A's motion for summary judgment, the Plaintiffs claim, at minimum, that the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et. seq.*, apply to the Dorr/C&A assignment and required C&A to provide Plaintiffs with a settlement statement at the time when C&A dispersed loan "proceeds" to pay for: (1) work done to prepare the Newburgh property for delivery of the mobile home ($11,000); (2) construction of a well ($3,628.57); (3) the obligation secured by a prior mortgage on the Newburgh property ($6,750.00); and (4) taxes and fees, ($382.42 and $18.00, respectively). (*See* C&A's S.M.F. ¶¶ 24, 33.) Consistent with the C&A's interpretation of the RESPA and the prevailing weight of precedent, C&A was not required to provide a RESPA settlement statement upon the disbursement of funds to the Plaintiffs.[7]

To the extent the Court credits Plaintiffs' assertion that C&A "table-funded"[8] the November 2006 Hatt/Dorr transaction by virtue of purchasing a limited interest in the

---

[7] Although it is clear from the summary judgment record that C&A issued a check in favor of Defendant Dorr for $13,221.01 (an amount equal to C&A's the payment for its negotiated interest in the Hatt/Dorr Mortgage Note less expenses paid to Plaintiffs) on February 9, 2007, the record is unclear as to exactly what date C&A dispersed funds directly to the Plaintiffs in order to cover the costs associated with conducting repairs on the mobile home, preparing the Newburgh property for delivery of the mobile home, and satisfying pre-existing debt obligations on the Newburgh property.

[8] According to Regulation X, 24 C.F.R. § 3500.2, the regulatory framework designed to implement RESPA, "[t]able funding means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." *Id.* Even crediting the Plaintiff's assertion that Defendant Dorr had perhaps agreed to assign an interest in November 1, 2006 mortgage to C&A on or before the date of the instrument—by virtue of the Exclusive Option to Purchase

9

mortgage note and by dispersing funds to cover the costs associated with both fixing the mobile home and to pay off an outstanding mortgage on the property (in addition to satisfying other taxes and fees), the Plaintiffs have advanced no argument, nor proffered any facts, to show the transaction qualifies as a "federally related mortgage loan"—a prerequisite for maintaining any claim under RESPA. *See* 12 U.S.C. 2603(a) (requiring the issue of a uniform settlement for all "federally related mortgage loans"); 12 U.S.C. § 2602(1)(B) (defining the term "federally related mortgage loan").

More importantly, although 12 U.S.C. § 2614 vests both state and federal courts with jurisdiction to enforce purported violations of RESPA §§ 2605 (regarding disclosures "relating to assignment, sale, or transfer of loan servicing"), 2607 (enacting a "prohibition against kickbacks and unearned fees"), and 2608 (prohibiting a seller of property from requiring that the "title insurance covering the property be purchased by the buyer from any particular title company"),[9] no similar private of right of action exists for an alleged violation 12 U.S.C. § 2603—i.e. RESPA § 4. *See* 12 U.S.C. § 2603 (requiring a "standard real estate settlement form in all transactions in the United States which involve federally related mortgage loans"). Notwithstanding the plain language of the statute, which is devoid of any suggestion that a failure to provide a settlement

---

Ageement executed by Dorr and C&A Secretary Linda Christenson dated November 1, 2006—the transaction does not constitute what the Court views as a classic a "table-funded" transaction consistent with definition provided in Regulation Z. The transaction in this case essentially occurred in three phases. Defendant Dorr consummated his deal with the Plaintiffs on November 1, 2006. (Def. C&A's Supp. S. M.F. Exs. A&B.) Thereafter, Defendant Door negotiated the terms the assignment agreement with C&A until that deal was finalized on February 7, 2007. (Def. C&A's Supp. S. M.F. ¶ 29; Ex. D.) At some point between January 5, 2007 and February 7, 2007, the time in which Dorr and C&A were negotiating the final terms of the assignment, C&A financed repairs and other upgrades to Newburgh property by paying off the creditors who had performed the work. (*Id.* ¶ 35.) The balance of the loan unrelated to mobile home itself was therefore not "funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2. Consequently, the Court questions whether the type of transaction in this case can properly be defined as the type of table financing that would place C&A in the position of providing a settlement statement or other disclosures under RESPA.

[9] RESPA provisions §§ 2605, 2607, and 2608 are cited in the statute as §§ "6, 8, or 9." *See* 12 U.S.C. § 2614.

statement under 12 U.S.C. 2603 creates a cognizable cause of action, a clear majority of the state and federal courts that have addressed the specific question of whether a "violation" of 12 U.S.C. § 2603 provides a potential plaintiff with a private right of action, express or implied, have uniformly answered the question in the negative. *See, e.g., Bloom v. Martin*, 865 F. Supp. 1377, 1383-85 (N.D. Cal. 1994); *Morrison v. Brookstone Mortg. Co.*, 415 F. Supp. 2d 801, 804-06 (S.D. Ohio 2005); *Sith v. Thorne*, 488 F. Supp 2d 534, 558-59 (E.D. Va. 2007); *Sturm v. Peoples Trust & Savings Bank*, 713 N.W2d 1, 2-4 (Iowa 2006); *cf. Campbell v. Machias Savings Bank*, 865 F. Supp. 26, 32 (D. Me. 1994) (relying in Seventh Circuit precedent in holding that no private right of action exists under RESPA § 10 (12 U.S.C. § 2609) because 12 U.S.C. § 2314 expressly limits actionable claims to alleged violations of §§ 6, 8, or 9 (12 U.S.C. §§ 2605, 2607, or 2608, respectively)). The Court recognizes that RESPA was enacted to ensure "more effective advance disclosure to home buyers and sellers of settlement costs," 12 U.S.C. § 2601(b)(1), however, the statute provides no teeth to remedy a mortgage lender's purported failure to provide a settlement statement. *Sith*, 488 F. Supp 2d at 558; (*See* Compl. ¶ 23).

Because the Plaintiff's RESPA claim involves only an alleged failure to provide a settlement statement at the time C&A dispersed funds, a claim for which no private right of action exists, the Court need not reach the tangential issue of whether Dorr could be considered the "dealer," and C&A the "funding lender," for the purposes of triggering RESPA § 6 disclosure requirements.[10] On the face of the Complaint, the Plaintiffs have

---

[10] Regulation X defines the term "dealer," as it would apply in this case as "one who engages in the business of manufactured home retail sales." 24 C.F.R. § 3500.2(b). In the event the Plaintiffs had provided evidence that Defendant Dorr was a "dealer" within the purview of the definition above, and as a dealer, assisted the Plaintiffs in obtaining a "federally related mortgage loan" from C&A, assigned his legal

11

asserted no claim under RESPA for C&A's alleged violation of RESPA's disclosure

requirements, and the only claim referencing failed disclosure efforts applies solely to the

Truth-in-Lending claim addressed above.[11] While the Court is sympathetic to the

Plaintiffs' position, given Defendant Dorr's apparent questionable business practices, the

principle thrust of this litigation pertains to their dealings with him.

The entry is:

1.  Defendant C&A's M.R. Civ. P. 56 Motion for Summary Judgment is
    **GRANTED**.

2.  At the direction of the Court, this Order shall be incorporated into the docket
    by reference pursuant to M.R. Civ. P. 79.

Dated: December 7, 2010

William.R.Anderson
Justice, Maine Superior Court

---

interest to C&A, and received the net proceeds of the loan, C&A, as the nominal "funding lender," might
have assumed an obligation to comply with the RESPA's disclosure requirements under 12 U.S.C. § 2605.
*Id.*

[11] The Court finds as a matter of law that the Plaintiffs cannot sustain their "equity and good conscience"
against C&A for benefit allegedly conferred by the Plaintiffs' efforts to repair and improve the Liberty
mobile home. *See A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n.3 (Me. 1994)
("Unjust enrichment describes the recovery for the value of the benefit retained when there is no
contractual relationship, but when, on grounds of fairness and justice, the law compels performance of a
legal and moral duty to pay.") (citation omitted).

AIMEE J HATT  - PLAINTIFF                              SUPERIOR COURT
2945 KENNEBEC ROAD                                    PENOBSCOT, ss.
NEWBURGH ME 04444                                     Docket No   BANSC-CV-2009-00056
Attorney for: AIMEE J HATT
PAUL A WEEKS  - RETAINED 03/03/2009
LAW OFFICE OF PAUL WEEKS                              **DOCKET RECORD**
82 COLUMBIA STREET
BANGOR ME 04401


SCOTT E DIONNE  - PLAINTIFF
2945 KENNEBEC ROAD
NEWBURGH ME 04444
Attorney for: SCOTT E DIONNE
PAUL A WEEKS  - RETAINED 03/03/2009
LAW OFFICE OF PAUL WEEKS
82 COLUMBIA STREET
BANGOR ME 04401



vs
C AND A FINANCIAL PROGRAMS INC - DEFENDANT
789 S FEDERAL HWY SUITE 304
STUART FL 34994
Attorney for: C AND A FINANCIAL PROGRAMS INC
F BRUCE SLEEPER  - RETAINED
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112


RICHARD D DORR  - DEFENDANT
90 CHASE ROAD
BANGOR ME 04401


Filing Document: COMPLAINT                    Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 03/03/2009

## Docket Events:

03/03/2009 FILING DOCUMENT - COMPLAINT FILED ON 03/03/2009

03/03/2009 Party(s):  AIMEE J HATT
           ATTORNEY - RETAINED ENTERED ON 03/03/2009
           Plaintiff's Attorney: PAUL A WEEKS

03/03/2009 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 03/03/2009
           TO ATTORNEY FOR PLAINTIFF.

03/11/2009 Party(s):  RICHARD D DORR
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 03/05/2009
           AS TO DEFENDANT RICHARD D. DORR BY JOYCE DORR, WIFE.

03/11/2009 Party(s):  RICHARD D DORR
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 03/09/2009

03/19/2009 Party(s):  C AND A FINANCIAL PROGRAMS INC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 03/10/2009