2009 ME 57

**Kelly Jo COOKSON**

v.

**BREWER SCHOOL DEPARTMENT et al.**

Supreme Judicial Court of Maine.

Argued: May 15, 2008.
Decided: June 2, 2009.

Arthur J. Greif, Esq. (orally), Andrea V.W. Wan, Esq., Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, ME, for Kelly Jo Cookson.

Melissa A. Hewey, Esq. (orally), Drummond Woodsum & MacMahon, Portland, ME, for Brewer School Department and Daniel Lee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1]   Kelly Jo Cookson appeals from a summary judgment entered in the Superior Court (Penobscot County, *Cuddy, J.*) in favor of the defendants, Brewer School Department and Superintendent Daniel Lee, on Cookson's complaint alleging (1) sexual orientation employment discrimination, in violation of the Maine Human Rights Act, for the school's failure to rehire her as a high school softball coach, *see* 5 M.R.S. §§ 4571–4572 (2008), and (2) slander per se regarding certain statements made by Lee to parents who supported Cookson.  We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] Viewing the evidence in the light most favorable to Cookson as the nonprevailing party, *see Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825, the following facts are supported in the summary judgment record.

[¶ 3] Cookson was the head coach of the Brewer High School varsity softball team from 1993 until 2005. During her tenure, the team was considered to be successful and made the playoffs in all but one of those years. Cookson is a lesbian.

[¶ 4] During the 2005 season, a player on Cookson's team quit, and that player's mother made a complaint to Betsy Webb, who was then the superintendent. Among other things, the complaint accused Cookson of subjecting her players to verbal abuse and hazing, and specifically referenced an incident before the 2005 season during which players were brought to a farm where, in Cookson's presence, they touched and walked in sheep feces. Webb investigated the allegations contained in the complaint and discovered that a similar incident had occurred prior to the 2004 season. As a result of her investigation, Webb issued a letter of reprimand to Cookson.

[¶ 5] Lee succeeded Webb as superintendent for the Brewer School Department in September 2005. The following month, Lee received a notice of tort claim from the same family that had made the previous complaint to Webb.[1] The tort claim was based on many of the same allegations as that complaint, and referenced the sheep farm incidents in 2004 and 2005. Immediately after receiving the notice of tort claim, Lee met with Cookson and the athletic director, Dennis Kiah. During that meeting, Cookson told Lee that she would not resign, and he replied, "We're not even thinking along those lines." Also at that meeting, Cookson brought to Lee's attention alleged hazing incidents on other teams. While Lee was considering whether to recommend Cookson as coach for the 2006 season, he conducted an investigation into the tort claim and learned about the earlier complaint and resulting letter of reprimand.[2]

[¶ 6] At some point before he made his hiring recommendation to the School Committee in late January or early February, Lee was made aware of Cookson's sexual orientation. During that time, Lee also met with parents who expressed support for Cookson. Lee told those parents that he had knowledge of items in Cookson's personnel file that he could not share with them and that Cookson may not have been entirely truthful with them. Lee also told them about a staff member at another school where he had worked who had been involved in a nudist colony and implied that there were similarities to Cookson's situation.

[¶ 7] Lee ultimately decided not to nominate Cookson as the head softball coach for the 2006 season. Lee asserts that this decision was based primarily on Cookson's involvement in hazing activities in 2004 and 2005, in violation of the school's anti-hazing policy, and Lee's belief that Cookson was not providing a "balanced" sports program for the team. Lee nominated Skip Estes to replace Cookson. Estes, who had been the junior varsity softball coach for one year while Cookson was the head coach, and who had coached

---

1. As of the date of filing of this appeal, this notice of claim had not ripened into a lawsuit.

2. During his investigation, Lee received a copy of a report from a private investigator hired by the family who sent the notice of tort claim, detailing other alleged controversial incidents involving Cookson.

summer softball for several years, is married to a woman. The School Committee accepted Lee's recommendation and hired Estes as the head softball coach.

[¶ 8] When Cookson's contract was not renewed, she filed a complaint in the Superior Court alleging (1) employment discrimination, in violation of sections 4571 and 4572 of the MHRA, for the School Department's failure to rehire her as a high school softball coach, and (2) slander per se for Lee's statement to parents that there were things in Cookson's personnel file that he could not discuss with them. After filing an answer, the School Department and Lee jointly moved for summary judgment and the parties each filed statements of material facts with references to supporting evidence pursuant to M.R. Civ. P. 56(h).

[¶ 9] The court entered summary judgment in favor of the School Department and Lee on both the discrimination and slander per se claims. For the purposes of its summary judgment analysis, the Superior Court accepted that Cookson had demonstrated the elements of a prima facie case of discrimination and determined that the School Department and Lee had articulated a legitimate, nondiscriminatory reason for declining to rehire Cookson. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court then concluded, viewing the evidence in Cookson's favor, that she had failed to present sufficient evidence that the stated reason she was not rehired was a pretext for illegal discrimination based on her sexual orientation. *See id.* at 804–05, 93 S.Ct. 1817.

[¶ 10] Regarding the slander per se count of Cookson's complaint, the court determined that the statement Lee had made regarding Cookson's personnel file was true and therefore not defamatory because he was required to keep employee information confidential, including evaluations of employee performance, complaints, and charges of misconduct. Cookson timely appealed from the judgment.

## II. DISCUSSION

▮▮▮ [¶ 11] We review a grant of summary judgment de novo, viewing the facts and any inferences that may be drawn from them in the light most favorable to the nonprevailing party to determine if the statements of material facts and referenced record evidence generate a genuine issue of material fact. *Dyer,* 2008 ME 106, ¶ 14, 951 A.2d at 825. "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." *Brown Dev. Corp. v. Hemond,* 2008 ME 146, ¶ 10, 956 A.2d 104, 108.

▮▮ [¶ 12] Although no longer an extreme remedy, summary judgment is "not a substitute for trial." *Arrow Fastener Co. v. Wrabacon, Inc.,* 2007 ME 34, ¶ 18, 917 A.2d 123, 127. Thus, "[e]ven when one party's version of the facts appears more credible and persuasive to the court, a summary judgment is inappropriate if a genuine factual dispute exists that is material to the outcome," in which case "the dispute must be resolved through fact-finding," regardless of the nonmoving party's likelihood of success. *Id.* ¶ 17, 917 A.2d at 126–27.

### A. Employment Discrimination Claim

[¶ 13] The Maine Human Rights Act provides that it is illegal for an employer to fail or refuse to hire a person based on that person's sexual orientation:

**Unlawful employment discrimination**

**1. Unlawful employment.** It is unlawful employment discrimination, in vi-

olation of this Act, except when based on a bona fide occupational qualification:

    A. For any employer to fail or refuse to hire or otherwise discriminate against any applicant for employment because of ... sexual orientation....

5 M.R.S. § 4572. Sexual orientation is defined as "a person's actual or perceived heterosexuality, bisexuality, homosexuality or gender identity or expression." 5 M.R.S. § 4553(9–C) (2008). The Act provides that "a person who has been subject to unlawful discrimination may file a civil action in the Superior Court against the person or persons who committed the unlawful discrimination." 5 M.R.S. § 4621(2008).

■■■■ [¶ 14] Federal law guides our construction of the MHRA. *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 13, 915 A.2d 400, 404. Accordingly, we apply the burden-shifting analysis first described in *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817. *See Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48, 53–54. First, the employee must establish a prima facie case by demonstrating that (1) the employee is a member of a protected class; (2) the employee applied for and was qualified for the job that the employer was seeking to fill; (3) the employee was not hired for the job; and (4) the job was later filled by a person who was not in the protected class. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employee makes this showing, a presumption of illegal discrimination is established, and the burden shifts to the employer to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *St. Mary's Honor Ctr.*, 509 U.S. at 506–07, 113 S.Ct. 2742; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer pro-

duces such evidence, the presumption of discrimination is rebutted, and the inquiry shifts to the ultimate burden of persuasion on the issue of intentional discrimination, which remains at all times with the employee. *St. Mary's Honor Ctr.*, 509 U.S. at 507–08, 113 S.Ct. 2742. To meet this burden, the employee must demonstrate that the reason asserted by the employer was a pretext and that the true reason was illegal discrimination. *Id.*

[¶ 15] Cookson has generated issues of fact regarding her prima facie case by offering evidence that (1) she is a lesbian; (2) she applied for and was qualified for the job of softball coach; (3) she was not rehired for the job; and (4) the job was later filled by a person who is not in the suspect class. *See id.* at 506, 113 S.Ct. 2742; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The School Department then articulated legitimate, nondiscriminatory reasons for refusing to rehire Cookson: that she was involved in hazing in violation of the school's anti-hazing policy and failed to provide a balanced sports program. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Thus, the burden then shifted back to Cookson to present facts that could demonstrate that the reasons asserted by Lee were a pretext for illegal discrimination. *See id.* at 804–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr.*, 509 U.S. at 507–08, 113 S.Ct. 2742. This is the central issue on appeal.

■■■■ [¶ 16] Although the plaintiff in an employment discrimination case retains at all times the ultimate burden of persuading the fact-finder that the employer was motivated by discriminatory animus, the "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742; *see also Reeves v. Sanderson Plumbing Prods.*,

*Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination.... In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). Thus, once an employer has articulated a legitimate, nondiscriminatory explanation for the employment decision, an employee can survive a motion for summary judgment by presenting sufficient evidence from which a jury could reasonably conclude that either (1) the circumstances underlying the employer's articulated reason are untrue, or (2) even if true, those circumstances were not the actual cause of the employment decision.[3] *See Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 23, 864 A.2d 169, 177.

[¶ 17] Although trial courts should exercise caution in resolving issues of pretext on summary judgment in employment discrimination cases, *see Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir.2008), "the presence of the issue of motivation or intent does not relieve the plaintiff of her or his burden of producing evidence sufficient to create a question of fact on that issue," *Stanley*, 2004 ME 157, ¶ 25, 864 A.2d at 178. One way to meet this burden is to demonstrate through affirmative evidence "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and ... infer that the employer did not act for the asserted non-discriminatory reasons." *Billings*, 515 F.3d at 55–56 (quotation marks omitted).

[¶ 18] With these legal principles in mind, we examine the facts set forth in the parties' statements of material facts in the light most favorable to Cookson, the non-prevailing party, to determine whether the summary judgment record evidences a genuine issue of material fact on the issue of pretext. *See Dyer*, 2008 ME 106, ¶ 14, 951 A.2d at 825.

[¶ 19] Cookson concedes that the conduct in the sheep pen constituted hazing. Thus, she does not assert that the factual circumstances underlying Lee's proffered explanation for the decision not to rehire her are false. She argues, rather, that illegal discrimination based on her sexual orientation—and not concerns arising from the incidents of hazing—caused that decision.[4]

3. Because a demonstration that the circumstances proffered by the employer were not the actual reason for the employment decision *allows* the inference at trial that the true reason was discriminatory animus, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the generation of an issue of fact regarding the veracity of the employer's explanation is sufficient to repel a motion for summary judgment. However, this does not lessen the plaintiff's ultimate burden, and at trial the employee is required to demonstrate not only that the employer's asserted reasons were untrue, but also that the actual reasons were discriminatory. *See id.* at 146–48, 120 S.Ct. 2097; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 515–16, 113 S.Ct. 2742, 125 L.Ed.2d 407(1993).

4. The parties agree that, although Lee made the recommendation to the School Committee to hire Skip Estes instead of Cookson, it was ultimately the Committee's decision whether to accept or reject that recommendation. In this circumstance, Cookson can meet her burden of proof on the issue of pretext by presenting evidence that (1) the Committee harbored or demonstrated discriminatory animus towards her, either existing independently or conveyed to it by Lee; or (2) Lee's decision not to recommend Cookson was motivated by discriminatory animus and he participated in or directly influenced the ultimate decision

[¶ 20] Viewed in the light most favorable to Cookson, the facts could be understood as follows: in early 2005, the parent of one of Cookson's former players registered a complaint with Betsy Webb, Lee's predecessor as superintendent, accusing Cookson of hazing. After investigating the allegations in the complaint, Webb issued a letter of reprimand to Cookson, Later that year, the same family that had made the previous complaint to Webb sent a notice of tort claim to Lee based on many of the same allegations contained in that complaint, and before Lee began his own investigation, he indicated that he was not thinking along the lines of requesting Cookson's resignation. During Lee's investigation, Cookson reported incidents of hazing on other teams to Lee, but he did not initiate an investigation into them.[5] After learning of Cookson's sexual orientation, Lee recommended Estes and not Cookson for the coaching position, ostensibly because of the same hazing incidents for which she had already been reprimanded and which he had suggested previously would not result in a decision not to rehire her.

[¶ 21] The Superior Court concluded that these facts were simply insufficient to generate a challenge to Lee's assertion of a legitimate, nondiscriminatory reason for declining to rehire Cookson. We recognize that pretext is difficult to assess at the summary judgment stage, particularly given that direct evidence of discriminatory animus will rarely be available.[6] *See Reeves,* 530 U.S. at 141, 120 S.Ct. 2097. There is no "mechanical formula" for identifying pretext, and the issue of whether an employee has generated an issue of fact regarding an employer's motivation or intent is one heavily dependent on the individual facts before the court. *See Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 39–40 (1st Cir.2003).

[¶ 22] In these circumstances, an employee's assertion of discriminatory animus on the part of an employer will not survive summary judgment if she or he relies on mere "conclusory allegations, improbable inferences, and unsupported speculation." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir.2000) (quotation marks

---

not to rehire her. *See Webber v. Int'l Paper Co.,* 417 F.3d 229, 236–37 (1st Cir.2005); *Cariglia v. Hertz Equip. Rental Corp.,* 363 F.3d 77, 84–88 (1st Cir.2004). Although Cookson appears to argue that the Committee did harbor discriminatory bias against her, there are insufficient facts in the summary judgment record to support this assertion. However, the record does support the fact that the Committee deferred to Lee's recommendation regarding her contract renewal and did not conduct its own investigation into the matter. *See Thompson v. Coca–Cola Co.,* 522 F.3d 168, 178 (1st Cir.2008) (holding that an independent decision by a neutral decision-maker breaks the causal connection between a supervisor's discriminatory animus and an adverse employment action). Thus, Cookson's discrimination claim survives if she can demonstrate that Lee's motivations were discriminatory.

5. The School Department objects that Cookson's statements regarding hazing on other teams are not based on her personal knowledge. However, the School Department does not deny that Cookson reported these incidents, and the evidence may be considered for the purposes of demonstrating the fact and nature of Cookson's reports. *See Kelley v. Airborne Freight Corp.,* 140 F.3d 335, 346 (1st Cir.1998). In this context, the evidence can be construed to impugn Lee's articulated reasons for not rehiring Cookson by casting doubt on the significance that her role in hazing activities played in the ultimate decision.

6. In an affidavit submitted to the Superior Court on summary judgment, Lee indicated that he had, on another occasion, hired an administrator whom he knew to be gay because he considered her to be the best candidate for the job.

omitted); *see also LaFrenier v. Kinirey,* 550 F.3d 166, 167–68 (1st Cir.2008) (holding that a party cannot defeat a motion for summary judgment merely by asserting, without affirmative contradictory evidence, that the moving party's version of events is not believable).

■ [¶ 23] However, an employee need not convince the court on summary judgment that she *was* subjected to an adverse employment decision because of her protected status, or even that her version of events is more plausible. *See Chadwick v. WellPoint, Inc.,* 561 F.3d 38, 47 n. 11 (1st Cir.2009) ("[A]t summary judgment we do not decide which explanation for the [adverse employment action] is most convincing, but only whether [the plaintiff] has presented sufficient evidence regarding *her* explanation."); *see also Arrow Fastener Co.,* 2007 ME 34, ¶ 17, 917 A.2d at 126–27 (indicating that the ultimate question for a court on summary judgment is the failure of proof and not the relative credibility or sufficiency of the evidence). Rather, the employee need only assert sufficient facts, supported in the summary judgment record, from which a reasonable fact-finder *could* disbelieve the employer's proffered rationale and conclude that illegal discrimination was the true motivating factor. *See Reeves,* 530 U.S. at 146–47, 120 S.Ct. 2097; *Stanley,* 2004 ME 157, ¶¶ 12, 24, 864 A.2d at 174, 177–78.

■ [¶ 24] Applying this standard, and viewing the summary judgment record in the light most favorable to Cookson, we conclude that she has generated a genuine issue of material fact on the issue of pretext. We recognize that a fact-finder could ultimately determine that Cookson failed to establish that Lee's offered rationale was a pretext for illegal discrimination and that the serious nature of the hazing and other alleged incidents, the parental concerns and complaints, and the need for a more balanced program were the actual motivating factors behind the decision not to nominate her as head coach. Indeed, Lee asserts that his final decision not to recommend Cookson could not have been motivated by discriminatory animus because he made that decision on January 17, 2006, prior to discovering that Cookson is a lesbian. However, he met with parents supportive of Cookson three days later and suggested that he had not yet ruled out Cookson for the position at that time. Further, his decision to recommend Estes was not communicated to the Committee until *after* January 23, 2006, the date that he asserts he learned of her sexual orientation.

[¶ 25] Thus, the timing of Lee's ultimate decision, relative to when he knew of Cookson's sexual orientation, is, on the record before us, a material disputed fact inappropriate for resolution at the summary judgment stage. Considered in conjunction with evidence of Lee's initial impulse not to request Cookson's resignation, his alleged failure to fully investigate Cookson's reports of hazing on other teams, and his reliance on hazing incidents for which Cookson had already been punished, a fact-finder could reasonably conclude that Lee's decision was not based on Cookson's conduct but instead was motivated by her sexual orientation.[7] *See*

---

7. We are presented here with a summary judgment record that stands in contrast to that addressed in *Stanley v. Hancock County Comm'rs,* 2004 ME 157, 864 A.2d 169. In *Stanley,* we affirmed the trial court's grant of summary judgment to an employer when the plaintiff failed to controvert through affirmative evidence the employer's proffered rationale for terminating him. *Id.* ¶¶ 23–24, 864 A.2d at 177–78. Here, Cookson has presented sufficient evidence to support a reasonable inference that Lee's articulated reasons for

*Reeves*, 530 U.S. at 147, 120 S.Ct. 2097; *Chadwick*, 561 F.3d at 47 (noting that discrimination can be demonstrated through the elimination of other nondiscriminatory reasons, leaving discriminatory animus as the most plausible explanation).

[¶ 26] Accordingly, a fact-finder is the proper entity to determine whether this and other evidence demonstrates that Lee's asserted legitimate, nondiscriminatory reasons were a pretext for illegal discrimination, and we vacate the summary judgment on Cookson's MHRA claim.

## B. Slander Per Se

[¶ 27] Slander per se refers to spoken defamatory statements that "relate to a profession, occupation or official station in which the plaintiff was employed. Malice is implied as a matter of law in such cases, and the claimant may recover compensatory damages without proving special damages." *Saunders v. VanPelt*, 497 A.2d 1121, 1124–25 (Me. 1985). To prove defamation, a plaintiff must establish that a false statement published to a third party harmed the plaintiff's reputation so as to lower her in the community's estimation. *Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083, 1087.

[¶ 28] Cookson argues that she generated a genuine issue of material fact regarding whether Lee's statements to the parents that he could not discuss her personnel file were defamatory because that file did not contain anything more than Webb's letter of reprimand and because Lee's comments regarding Cookson's truthfulness and the comparison with the employee who was involved in a nudist colony implied the existence of undisclosed damaging facts.

[¶ 29] However, Cookson has not presented facts to dispute that Lee's statement regarding her personnel file was true. Lee could not speak with the parents about performance evaluations or other information reflecting on Cookson's quality as a coach. *See* 20–A M.R.S. § 6101(2)(B)(3) (2008) (providing that information relating to "[p]erformance evaluations ... and other reports and evaluations reflecting on the quality or adequacy of the employee's work or general character compiled and maintained for employment purposes" must be kept confidential). Whether or not it was physically placed in Cookson's file, the information Lee learned upon his investigation was properly part of Cookson's personnel file and was required to be kept confidential. *See id.*

[¶ 30] Furthermore, Cookson has not offered facts to dispute that Lee was being truthful when he said to the parents that he had made a personnel decision in another case that involved a nudist and that he did not know whether Cookson had been honest with the parents. Because Cookson has failed to raise a genuine issue of material fact on her slander per se claim, the court did not err in entering a summary judgment for Lee on this claim. In these circumstances, we need not reach Lee's additional argument that he is immune from tort liability because he was performing a discretionary government function pursuant to 14 M.R.S. § 8111(1) (2008).

The entry is:

Summary judgment affirmed as to the slander per se claim and vacated as to the employment discrimination claim. Remanded for further proceedings consistent with this opinion.

failing to recommend her as head coach were untrue.