STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: CV-10-347

                                        RAC —CUM - 11/9/2011

NICOLE DUSSAULT,

           Plaintiff,

    v.                                       **ORDER**

RRE COACH LANTERN
HOLDINGS, LLC



STATE OF MAINE
Cumberland, SS. Clerk's Office

NOV 09 2011

RECEIVED

and

RESOURCE REAL ESTATE
MANAGEMENT, Inc.,

           Defendant

    Defendants RRE Coach Lantern Holdings, LLC and Resource Real Estate

Management, Inc. move jointly for summary judgment upholding their right to

refuse to attach a Section 8 Tenancy Addendum to their lease as landlords.

Plaintiff Nicole Dussault cross-moves for summary judgment declaring that the

defendants unlawfully discriminated against her in violation of the public

assistance provisions of the Maine Human Rights Act, 5 M.R.S. § 4582.

                              **BACKGROUND**

**I.      Housing Choice Voucher Program – Section 8**

    Under the Housing Choice Voucher Program, commonly known as

Section 8, the United States Department of Housing and Urban Development

("HUD") provides funds to subsidize housing for low-income families and

individuals. 42 U.S.C. § 1437, *et seq.* Section 8 is administered by State or local

agencies called "public housing authorities" ("PHA"), to which HUD provides

the actual housing assistance funds. 24 C.F.R. § 982.1(a)(1). In a case of tenant-

                                    1

based assistance, like in this case, the individual selects a suitable unit and, if the unit is acceptable to the PHA, the PHA then enters into a contract with the owner or landlord to make rent subsidy payments on behalf of the family. *Id.* § 982.1(a)(2).

> Under federal law, [Section 8] is a voluntary program and property owners will be bound by a contract only if "the owner is willing to lease the unit under the program." 24 C.F.R. § 982.302(b) (2009). But "[n]othing in part 982 is intended to pre-empt operation of [s]tate and local laws that prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8 voucher-holder." 24 C.F.R. § 982.53(d) (2009). Thus, "[t]he Federal statute merely creates the scheme and sets out the guidelines for the funding and implementation of the program . . . through local housing authorities. It does not preclude [s]tate regulation." *Attorney Gen. v. Brown*, 400 Mass. 826, 511 N.E.2d 1103, 1105 (Mass. 1987).

*Edwards v. Hopkins Plaza L.P.*, 783 N.W.2d 171, 176 (Minn. App. 2010).

As part of the regulatory requirements, any landlord accepting Section 8 housing vouchers must include a HUD-prescribed tenancy addendum to its standard lease form. 24 C.F.R. § 982.308(b)(2). Coach Lantern asserts that it is unwilling to attach an Addendum to any of its leases because of the additional conditions contained within. (Defs.' S.M.F. ¶ 24.) By signing the Addendum the landlord agrees, in part:

- to maintain the unit and premises in accordance with the PHA's Housing Quality Standards (Pl.'s S.M.F. ¶ 17; Decker Aff. ¶ 4, Ex. B);

- not to raise the rent during the initial lease term (Decker Aff. ¶ 4, Ex. B.);

- to charge no more rent than what HUD determines is "reasonable" or the "fair market value" for the community or metropolitan area (Defs.' S.M.F. ¶ 17, *as qualified by* Pl.'s Opp. S.M.F. ¶ 17);

2

- not to evict a tenant for the sole reason that PHA did not pay its share of the contract rent (Defs.' S.M.F. ¶ 18, *as qualified by* Pl.'s Opp. S.M.F. ¶ 18; Pl.'s S.M.F. ¶ 19);

- not to evict a tenant who is a victim of domestic violence based on an act of domestic violence committed against her (Defs.' S.M.F. ¶ 19, *as qualified by* Pl.'s Opp. S.M.F. ¶ 19);

- to open the premises to inspection by a PHA inspector at the beginning of the lease, upon any complaint by a tenant, and after the landlord has remedied a problem identified in a prior inspection (Defs.' S.M.F. ¶ 20);

- to allow PHA to not begin payments until they make an initial inspection (Pl.'s Opp. S.M.F. ¶ 22; Pl.'s S.M.F. ¶ 21);

- to notify PHA as least sixty days prior to any rent increase (Defs.' S.M.F. ¶ 23).

Ms. Dussault asserts that the Addendum does not alter the landlord's obligations already existing under state law. (Pl.'s Opp. S.M.F. ¶ 24.)[1]

## II.    Facts Relevant to Ms. Dussault's Claim

On July 14, 2008, Avesta Housing, a non-profit organization that administers HUD Section 8 housing vouchers as a contract agency for the Maine State Housing Authority ("MSHA"), issued a Section 8 Housing Choice Voucher to Ms. Dussault. (Defs.' S.M.F. ¶ 4; Pl.'s S.M.F. ¶ 2.) On August 5, 2008, Ms. Dussault called Coach Lantern[2] to inquire about renting an apartment in Scarborough to maintain the special education services that her son received.

---

[1] Ms. Dussault failed to support this statement with a record citation. (*See* Defs.' Rep. S.M.F. ¶ 24.) However, this is an issue of law for the court to decide.

[2] Resource Real Estate Management, Inc. is an affiliate of Coach Lantern. (Defs.' S.M.F. ¶ 2.)

(Defs.' S.M.F. ¶ 5; Pl.'s S.M.F. ¶ 3.) The rent for the apartment was within Section 8 limits. (Pl.'s S.M.F. ¶ 5.) According to Ms. Dussault, an individual at Coach Lantern told Ms. Dussault that it did not accept Section 8 vouchers. (Defs.' S.M.F. ¶ 6.) Somebody at Coach Lantern also told Ms. Dussault's caseworker, Christina Griffin ("Ms. Griffin"), that it did not accept Section 8 vouchers. (Defs.' S.M.F. ¶ 7.)

Approximately two weeks later, Ms. Dussault again called Coach Lantern to inquire about a three-bedroom apartment. (Defs.' S.M.F. ¶ 8; Pl.'s S.M.F. ¶ 6.) This time, Ms. Dussault did not tell Coach Lantern that she would be using a Section 8 voucher. (Defs.' S.M.F. ¶ 9; Pl.'s S.M.F. ¶ 6.) Ms. Dussault visited the apartment and filled out an application. (Defs.' S.M.F. ¶¶ 10–11; Pl.'s S.M.F. ¶¶ 7-9.) Thereafter, Ms. Griffin sent a letter to Coach Lantern stating that Ms. Dussault would be using a Section 8 voucher and urged Coach Lantern to accept Ms. Dussault as a tenant. (Defs.' S.M.F. ¶ 12; Pl.'s S.M.F. ¶ 11; Decker Aff. ¶ 3, Ex. A.) Ms. Griffin also forwarded a "landlord packet" that contained a copy of the voucher indicating that Coach Lantern would need to sign a lease addendum. (Defs.' S.M.F. ¶ 13; Pl.'s S.M.F. ¶ 12; Decker Aff. ¶ 3, Ex. A.) Though willing to rent to Ms. Dussault, Coach Lantern was unwilling to attach a HUD-prescribed Tenancy Addendum ("Addendum") to its standard lease. (Defs.' S.M.F. ¶ 28; Pl.'s S.M.F. ¶¶ 13-14.)

When Coach Lantern refused to attach the Addendum to Ms. Dussault's lease, she filed a complaint with the Maine Human Rights Commission ("Commission"). (Defs.' S.M.F. ¶ 28; Pl.'s S.M.F. ¶ 15.) On April 13, 2009, the Commission unanimously determined that there were reasonable grounds to believe that unlawful discrimination occurred. (Pl.'s S.M.F. ¶ 16.)

4

Ms. Dussault filed a two-count complaint with the court alleging violations of the Maine Human Rights Act against Coach Lantern and Resource Real Estate. (Compl. ¶¶ 27-30.)[3] The issue in this case is whether a landlord's refusal to attach a Section 8 Tenancy Addendum to the landlord's lease constitutes unlawful discrimination in violation of the public assistance provisions of the Maine Human Rights Act, 5 M.R.S. § 4582.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A motion for summary judgment must be supported by citations to record evidence of a quality that would be admissible at trial. *Levine*, 2001 ME 77, ¶ 6, 770 A.2d 653 (citing M.R. Civ. P. 56(e)). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)).

### II. The Maine Human Rights Act (MHRA)

The MHRA declares that every individual should have the right "to secure decent housing in accordance with the individual's ability to pay" as a

---

[3] Ms. Dussault subsequently withdrew her request for injunctive relief. (Defs.' S.M.F. ¶ 29' Pl.'s Opp. Mem. at 21.)

civil right. 5 M.R.S. § 4581 (2010). The MHRA makes it unlawful "[f]or any person furnishing rental premises or public accommodations to refuse to rent or impose different terms of tenancy to any individual who is a recipient of federal, state or local public assistance, including . . . housing subsidies[4] primarily because of the individual's status as recipient . . .." 5 M.R.S. § 4582 (2010). According to the defendants, when read together, the MHRA requires only that landlords treat low-income individuals and families the same as any other potential tenant, and not rely on stereotypes about public assistance recipients. (Defs.' Mem. at 6.)

The '"primary purpose in interpreting a statute is to give effect to the intent of the Legislature."' *Allied Res., Inc. v. Dep't of Pub. Safety*, 2010 ME 64, ¶ 11, 999 A.2d 940 (quoting *Rich v. Dep't of Marine Res.*, 2010 ME 41, ¶ 7, 994 A.2d 815). In 2007, the Commission led an effort to amend the MHRA to make it unlawful discrimination to refuse to rent to Section 8 voucher holders because of the burdens associated with the Section 8 program. *See* L.D. 685 (123d Legis. 2007). The Legislature refused to adopt the proposed amendment.

In response to the Legislature's refusal, the Commission stated:

The fact that the Judiciary Committee amended LD 685 to omit the change to § 4582, however, should not be interpreted to mean that § 4582 does not require landlords to comply with the requirements of public assistance programs. On the contrary, it is possible that the Committee felt that the potentially controversial amendment was unnecessary in light to the possibility that the requirement was already in the existing language.

---

[4] Though it is not clear whether the parties disagree on this, the court finds that Section 8 is a "housing subsidy" under the MHRA.

6

*Dussault v. RRE Coach Lantern*, H08-0612-A, ¶ 12. Alternatively, the defendants argue that the Legislature did not want to amend the law to make participation in programs such as Section 8 mandatory. (Defs.' Mem. 7.)

The Commission investigates, advises, and enforces the MHRA. 5 M.R.S. § 4566; "About Us," Maine Human Rights Commission, available at http://www.maine.gov/mhrc/about.html (last visited September 20, 2011). "[T]he Commission's function is generally that of an investigator and conciliator." *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 12, 962 A.2d 335. The Commission regularly reviews cases involving tenants and prospective tenants who allege unlawful housing discrimination on the basis of tenant-based housing subsidies.

"Considerable deference is given 'to the agency's interpretation of its own rules, regulations, and procedures, and [we] will not set aside the agency's findings unless the rule or regulation plainly compels a contrary result.'" *Mulready v. Bd. of Real Estate Appraisers*, 2009 ME 135, ¶ 13, 984 A.2d 1285 (quoting *Beauchene v. Dep't of Health & Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866 (quotation marks omitted)). The court "will not 'second-guess the agency on matters falling within its realm of expertise.'" *Mulready*, 2009 ME 135, ¶ 13, 984 A.2d 1285 (quoting *Wood v. Superintendent of Ins.*, 638 A.2d 67, 71 (Me. 1994)).

Though the Commission may be entitled to deference, especially given their undoubted expertise in housing discrimination cases, the Commission's ruling is not controlling. As discussed below, the court can decide Ms. Dussault's case on summary judgment despite the Commission's interpretation of the statute.

7

## III. Direct Evidence

The court finds that there is not direct evidence of discrimination, despite Ms. Dussault's contention otherwise. (Pl.'s Mem. at 10.) Under the mixed-motive analysis, which the Law Court utilizes for employment discrimination, "a plaintiff's burden is tempered so that she need prove only that the discriminatory action was a motivating factor in an adverse employment decision. The defendant then may 'assert an affirmative defense, bearing the burdens of production and persuasion that it would have taken the same action in the absence of the impermissible motivating factor.'" *Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002) (quoting *Weston-Smith v. Cooley Dickinson Hosp.*, 282 F.3d 60, 64 (quotations omitted)); *see Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14 n.6, 824 A.2d 48.

The defendants contend that they are not treating Ms. Dussault differently than those who do not receive public assistance. (Defs.' Rep. Mem. at 3.) Since they are offering Ms. Dussault an apartment at the same terms as other tenants, they are not discriminating against her on the basis of her status as a recipient of public assistance. (*Id.*) Instead, the defendants assert, and Ms. Dussault admits, that if it were not for the requirement to attach the Addendum the defendant would have rented Ms. Dussault the apartment, regardless of her status as a recipient of public assistance. (Defs.' S.M.F. 28; Opp. Defs.' S.M.F. 27.) Therefore, the court finds that the mixed-motive analysis is not applicable in this case.

## IV. Disparate Treatment

"Federal law guides our construction of the MHRA." *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 14, 974 A.2d 276 (citations omitted). Accordingly, the

8

court will apply the *McDonnell Douglas* burden-shifting analysis. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973)); *see Doyle*, 2003 ME 61, ¶ 14, 824 A.2d 48. The plaintiff has the burden of establishing that (1) she was on public assistance, (2) that the defendants refused to rent to her, and (3) that there is a causal link between her status and the defendants' refusal to rent to her. *Cookson*, 2009 ME 57, ¶ 14, 974 A.2d 276; *McDonnell Douglas*, 411 U.S. at 802. If the tenant meets her burden there is a presumption of unlawful discrimination and the burden then shifts to the landlord to articulate a legitimate, non-discriminatory reason for refusing to rent to her. *Id.* "If the [landlord] produces such evidence, the presumption of discrimination is rebutted, and the inquiry shifts to the ultimate burden of persuasion on the issue of intentional discrimination, which remains at all times with" the tenant. *Cookson*, 2009 ME 57, ¶ 14, 974 A.2d 276 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–508 (1993)). "To meet this burden, the [tenant] must demonstrate that the reason asserted by the [landlord] was a pretext and that the true reason was illegal discrimination." *Id.* For the purposes of the instant motion for summary judgment, the defendants assume that Ms. Dussault can set forth a prima facie case for unlawful discrimination. The defendants claim, however, that they have a legitimate, non-discriminatory reason for refusing to rent to Ms. Dussault and that there is no evidence that those reasons are pre-textual. (Defs.' Mem. at 8.)

The defendants claim that the costs and burdens associated with accepting Section 8 housing vouchers constitute a legitimate business reason for not renting to individuals who have their rent subsidized. (Defs.' Mem. at 8.) As outlined above, the defendants assert that the Addendum imposes upon landlords certain obligations that are not present under State law, and the Addendum significantly

9

impairs their rights under State law. For example, under the Addendum, the landlord waives its right to evict a tenant under certain circumstances. *Compare* Addendum *with* 14 M.R.S. § 6002 (2) (landlord may bring a forcible entry and detainer action if the rent is as little as seven days overdue, as long as it gives the tenant an opportunity to cure). Additionally, the Addendum further requires that the landlord notify the PHA at least 60 days prior to any rent increase, whereas State law requires the landlord to give only 45 days' notice. 14 M.R.S. § 6015 (2010).

"Although trial courts should exercise caution in resolving issues of pretext on summary judgment in . . . discrimination cases, the presence of the issue of motivation or intent does not relieve the plaintiff of her or his burden of producing evidence sufficient to create a question of fact on that issue." *Cookson,* 2009 ME 57, ¶ 17, 974 A.2d 276 (internal citations omitted). "One way to meet this burden is to demonstrate through affirmative evidence 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [landlord's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and . . . infer that the [landlord] did not act for the asserted non-discriminatory reasons.'" *Id.* (quoting *Billings,* 515 F.3d at 55-56 (quotation marks omitted)).

Ms. Dussault asserts that the defendants are overstating the burdens associated with participating in the Section 8 housing voucher program. According to Ms. Dussault, the alleged burdens are not enough to excuse non-participation. *Accord Franklin Tower One v. N.M.,* 157 N.J. 602, 621, 725 A.2d 1104, 1114 (N.J. 1999) ("Landlords in New Jersey are already subject to numerous regulations concerning the maintenance of their properties and relations with

10

their tenants."). Ms. Dussault asserts that a landlord's state law rights are constrained by state laws, local zoning ordinances, and the MHRA. (Pl.'s Opp. Mem. at 18.) For example, as Ms. Dussault claims, Maine law limits a landlord's right to evict for nonpayment of rent. Ms. Dussault equates the Addendum restrictions to the affirmative defense available for tenants who withhold rent for habitability problems. *See* 14 M.R.S. § 6002(3) (2010) (allowing a tenant to bring an affirmative defense of breach of warranty of habitability if a landlord brings an action to terminate the rental agreement, and the landlord has actual or constructive knowledge of the alleged violation).

In Maine, few cases have addressed public assistance discrimination. In *Catir v. Commissioner of the Department of Human Resources*, a nursing home decided to withdraw from the Medicaid system. 543 A.2d 356, 357 (Me. 1988). It notified its residents on Medicaid that they would have to pay the higher private rate. *Id.* The plaintiffs, former Medicaid patients, brought a suit claiming that the MHRA prohibits the nursing home from withdrawing from the Medicaid program. *Id.* The Law Court disagreed. *Id.* at 357–58. The Court noted that the MHRA makes it unlawful discrimination to "refuse[] to rent or impose[] different terms of tenancy on Medicaid recipients." *Id.* (quotations omitted). However, the plaintiffs in *Catir* could only "establish that the nursing home refused to accept the lower Medicaid payment and subjected the recipients to the same terms of tenancy offered to any other individual." *Id.* at 358. The Court noted, "[t]he equality of housing access secured by the Maine Human Rights Act is premised upon the assumption that the persons seeking the housing have the ability to pay. *Id.* (citing 5 M.R.S. § 4581 (1979)). The defendants assert that *Catir* is squarely on point here. Like in *Catir*, the

11

defendants will not accept Section 8 housing vouchers and will subject Section 8 recipients to the same terms of tenancy as other residents.

The MHRA states that it is unlawful discrimination to refuse to rent to a person primarily because of his or her status as a recipient of housing assistance, as opposed to solely because of his or her status. The statements of material facts clearly show that the defendants refused to rent to Ms. Dussault primarily because of the burdens associated with the Section 8 program instead of her status as a Section 8 recipient. Ms. Dussault admitted that the defendants contacted Avesta to see whether they could rent Ms. Dussault the apartment without attaching the Addendum to her lease, and they would have rented the apartment to Ms. Dussault if it were not for the necessity of the Addendum. (Defs.' S.M.F. ¶¶ 26, 28; Opp. Defs.' S.M.F. ¶¶ 25, 27.) The defendants asserted that they were burdened by the requirements in the Addendum and those burdens gave them a legitimate business reason to reject any prospective tenant who required the Addendum. Although Ms. Dussault argues that not all of the burdens are as great as the defendants allege they are still sufficient to justify a business necessity. Accordingly, the court cannot deny the defendants' motion for summary judgment on this record.

## V.    Disparate Impact

Under the disparate impact burden-shifting framework, to make her prima facie case, the plaintiff must identify a facially neutral practice that in fact affects one group more harshly than another. *Me. Human Rights Com. v. City of Auburn*, 408 A.2d 1253, 1264 (Me. 1979) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 426 (1975)). To counter the plaintiff's prima facie case, the defendants must establish that their process is justified by a business necessity, and not

12

merely a business convenience. *City of Auburn*, 408 A.2d at 1265 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). If there is evidence that the landlord's selection process is justified by a business necessity, the last step is for the plaintiff to show that the landlord's justification is a pretext or that there are alternative methods for selecting tenants that has a less discriminatory impact. *City of Auburn*, 408 A.2d at 1268 (citing *Albemarle Paper Co.*, 422 U.S. at 425). Once again, the defendants assume, for the purposes of summary judgment, that Ms. Dussault can make a prima facie case of unlawful discrimination.

As above, the defendants assert that the burdens of participating in the Section 8 voucher program constitute a business necessity, not a mere business convenience.[5] Also, as above, the defendants' proffered reason for refusing to attach the Addendum is not disputed on the summary judgment record. Therefore, summary judgment in the defendant's favor is appropriate at this time.

**The entry is:** The defendant's motion for summary judgment on the plaintiff's complaint is granted.

DATE: _____ 9, 2011

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 09 2011

RECEIVED

Roland A. Cole
Justice, Superior Court

---

[5] The Second, Sixth, and Seventh Circuits have all recognized that the burdens of participating in the Section 8 housing voucher program are legitimate reasons for the landlord not to participate, as evidenced by the voluntary nature of the program under Federal law. *See Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300–301 (2d Cir. 1988); *Knapp v. Eagle Prop. Mgmt. Corp.*, 54 F.3d 1272, 1280 (7th Cir. 1995); *Graoch Assoc. #33 v. Louisville / Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 372 (6th Cir. 2007). These cases, however, address the Federal Fair Housing Act, which does not protect recipients of public assistance or prevent discrimination based on a person's lawful source of income.

o

13

------------------------------------------------------------------------------

01 0000002831            ENDER, PATRICIA
   39 GREEN STREET PO BOX 2429 AUGUSTA ME 04338-2429
   F      NICOLE DUSSAULT                            PL        RTND    06/29/2010

02 0000003559           LEPAGE, MARGARET
   MERRILLS WHARF 254 COMMERCIAL ST PORTLAND ME 04101
   F     RESOURCE REAL ESTATE MANAGEMENT INC         DEF       RTND    06/29/2010
   F     RRE COACH LANTERN HOLDINGS                  DEF       RTND    06/29/2010

03 0000009163           MCGOVERN, KATHERINE
   88 FEDERAL ST PO BOX 547 PORTLAND ME 04112
   F     NICOLE DUSSAULT                             PL        RTND    06/29/2010