STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss.                           CIVIL ACTION
                                        DOCKET NO. CV-18-49


MAINE HUMAN RIGHTS
COMMISSION,
        Plaintiff,                      **ORDER ON MOTION FOR**
                                        **SUMMARY JUDGMENT**


V.


D & L APARTMENTS and
DARRELL SPROUL,
        Defendants


This matter is before the court on the motion for summary judgment filed by
Defendants D & L Apartments and Darrell Sproul.

## BACKGROUND

This case involves a one count complaint against D & L Apartments (D & L)
and its owner, Darrell Sproul (Sproul), alleging housing discrimination on the basis
of disability. Pl.'s Compl. ¶¶ 19 – 22.

The controversy arose when Justin Engstrom called Mr. Sproul on June 10,
2016, to inquire about renting an apartment. Mr. Engstrom was a veteran with PTSD
who had recently moved back to Maine after living in Colorado for the prior two
years. (Pl.'s Statement of Material Facts (S.M.F.), ¶¶15-16, 20, 25.) Although he had
yet to do so, Mr. Engstrom was planning on acquiring an assistance animal, namely
a dog. To that end, he had contacted Dogs 4 Warriors, an Ohio non-profit that
connects veterans with assistance animals, and was expecting to get an assistance
dog as soon as he could find appropriate housing for the dog and himself, having
been on their wait list since before moving back to Maine. S.M.F. ¶¶ 16-19, 23-24.

1

When Mr. Engstrom called Mr. Sproul to inquire about housing, he asked Mr. Sproul about dogs, at which point Mr. Engstrom states that Mr. Sproul's demeanor changed – Mr. Sproul was adamant that there be absolutely no dogs, and would not let Mr. Engstrom get another word in. S.M.F. ¶¶ 29-35. Part of the controversy in this case, and the major point where the parties disagree, is what precisely was said during that brief phone call; although he never mentioned that he suffered from PTSD or anything specific, Mr. Engstrom believes he may have mentioned that he was "handicapped."[1] Engstrom Depo, 58:21 – 59:1; 61:20-25. More importantly, the parties disagree on what precisely was said about assistance animals. Mr. Engstrom stated that he specified that he wished to have a "therapy dog," and also mentioned specifically "federally-protected, certified service or therapy dogs." S.M.F. ¶¶ 31, 33. D & L and Sproul, on the other hand, generally argue that Mr. Engstrom did not get into specifics, and challenges how much was said about assistance animals. Def's Reply to Pl.'s Opp. S.M.F. ¶¶ 30 – 35. The phone call ended with Mr. Sproul telling Mr. Engstrom not to bother filling out an application, since it would be denied. S.M.F. ¶ 36.

## STANDARD OF REVIEW

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by subdivision (h) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to judgment as a matter of law.'" *Town of Windham v. Christopher A. Bond*, No. CV-16-94, 2016 Me. Super. LEXIS 108, at *2 (July 13, 2016) (citing M.R. Civ. P. 56(c)). "In examining the statements of material facts submitted pursuant to subdivision (h), [a] genuine issue of material fact exists when the

---

[1] Both parties agree that it would have be unlawful for Mr. Sproul to inquire about whether or not Mr. Engstrom had a disability. *See* 5 M.R.S. § 4581-A(1)(A).

2

evidence requires a fact-finder to choose between competing versions of the truth." *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123 (citing *Farrington's Owner's Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). Even if one party's version of the facts appears significantly more credible and persuasive, summary judgment is inappropriate "if a genuine factual dispute exists that is material to the outcome." *Arrow Fastener*, 2007 ME 34, ¶ 17, 917 A.2d 123; *see also Emerson v. Sweet*, 432 A.2d 784, 787 n.6 (Me. 1981) ("Thus, the failure of proof, not the relative weight assigned to evidence should control the Court's disposition of the motion."). Thus, as the Law Court has stated, although summary judgment "is no longer an extreme remedy, it is not a substitute for trial." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

### Prima Facie Case

The Maine Human Rights Act makes it unlawful housing discrimination:

> For any owner, lessee, sublessee, managing agent or other person having the right to sell or rent or manage a housing accommodation, or any agent of these, to:
>
> . . .
>
> **B.** Refuse to show or refuse to sell, rent, lease, let or otherwise deny to or withhold from any person the housing accommodation because of race or color, sex, sexual orientation, physical or mental disability, religion, ancestry, national origin or familial status;
>
> **C.** Make, print or publish or cause to be made, printed or published any notice, statement or advertisement relating to the sale, rental or lease of the housing accommodation that indicates any preference, limitation or discrimination based upon race or color, sex, sexual orientation, physical or mental disability, religion, ancestry, national origin or familial status or an intention to make any such preference, limitation or discrimination;

3

5 M.R.S. § 4581-A(1)(B), (C). Additionally, "physical or mental disability" is defined as "[a] physical or mental impairment that: (1) Substantially limits one or more of a person's major life activities; (2) Significantly impairs physical or mental health; or (3) Requires special education, vocational rehabilitation, or related services." 5 M.R.S. § 4553-A. The parties do not dispute that Mr. Engstrom is disabled for the purposes of the MHRA.

Federal law guides the construction of the MHRA. *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 14, 974 A.2d 276. Accordingly, this court applies the burden-shifting scheme first developed by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48, 53-54; *Dussault v. Rre Coach Lantern Holdings*, No CV-10-347, 2011 Me. Super. LEXIS 226, at *12 (Nov. 9, 2011). First, the plaintiff must establish a prima facie case of discrimination by showing that the defendant landlord "[r]efuse[d] to show or refuse[d] to sell, rent, lease, let or otherwise den[ied] ... the housing accommodation because of ... physical or mental disability." 5 M.R.S. § 4581-A(1); *Me. Human Rights Comm'n v. Megunticook Mgmt. & Realty Corp.*, No. CV-15-135, 2017 Me. Super. LEXIS 94, at *3 (May 15, 2017). Second, if the plaintiff has established a prima facie case, the landlord/defendant must present evidence of a legitimate, non-discriminatory reason for the adverse action. *See Dussault v. RRE Coach Holdings, LLC*, 2014 ME 8, ¶ 22, 86 A.3d 52; *Megunticook Mgmt.,* 2017 Me. Super. LEXIS 94, at *3. Third, if the defendant presents such evidence, the plaintiff must then present evidence that the landlord's proffered reason is pretextual or untrue. *See Dussault*, 2014 Me 8, ¶ 22. This analysis addresses the parties' burdens of production, not persuasion. *Id.*; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 521 (1993). Although the plaintiff retains the ultimate burden of persuasion at all times, the "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional

4

discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511; *Cookson*, 2009 ME 57, ¶ 16. Thus, after the defendant has articulated a legitimate, non-discriminatory reason for refusing to rent, the plaintiff can survive a motion for summary judgment by presenting sufficient evidence from which a jury could reasonably conclude that either (1) the circumstances underlying the defendant's articulated reasons are untrue, or (2) that even if those circumstances are true, they are not the actual cause of the landlord's decision.[2] *See Cookson*, 2009 ME 57, ¶ 16; *Stanley v. Hancock Cnty. Comm'rs*, 2004 ME 157, ¶ 23, 864 A.2d 169. Although trial courts should be cautious when resolving issues of pretext at the summary judgment stage, *see Cookson*, 2009 ME 57, ¶ 17; *Billings v. Town of Grafton*, 515 F.3d 39, 56 (1st Cir. 2008), "the presence of the issue of motivation or intent does not relieve the plaintiff of her or his burden of producing evidence sufficient to create a question of fact on that issue," *Stanley*, 2004 ME 157, ¶ 25.

Viewing the evidence in the light most favorable to the non-moving party, the MHRC makes out a prima facie case of housing discrimination. Mr. Engstrom is disabled, and Mr. Sproul refused to show or rent any housing to Mr. Engstrom upon hearing of Mr. Engstrom's interest in owning a service animal. D & L's proffered reason is that their policy is to not allow pets without written permission, in order to screen out animals that might pose a direct threat to the health or safety of other tenants, that might result in property damage, or that might interfere with the reasonable enjoyment of housing accommodations by others.[3] Given MHRC's allegation that Mr. Sproul refused to consider Mr. Engstrom for housing as soon as

---

[2] As the Law Court in *Cookson* noted, "[b]ecause a demonstration that the circumstances proffered by the employer were not the actual reason for the employment decision *allows* the inference at trial that the true reason was discriminatory animus, the generation of an issue of fact regarding the veracity of the employer's explanation is sufficient to repel a motion for summary judgment." *Cookson*, 2009 ME 57, ¶ 16 n.3 (citations omitted) (emphasis in original). This is of course a different standard than the one required at trial.

[3] This is of course the language, practically verbatim, from section 4582-A(3) of the Maine Human Rights Act.

5

"therapy dogs" and "federally-protected service animals" were mentioned,⁺ and since Mr. Sproul did not mention any safety or cleanliness concerns when refusing to further speak to Mr. Engstrom about renting a unit, Mr. Engstrom has put forward evidence that D & L's proffered reason was pretextual.

The Maine Human Rights Act

The Maine Human Rights Act further provides that it is unlawful housing discrimination:

> For any owner, lessor, sublessor, managing agent or other person having the right to sell, rent, lease or manage a housing accommodation or any of their agents *to refuse to permit the use of an assistance animal or otherwise discriminate against an individual with a physical or mental disability who uses an assistance animal at the housing accommodation* unless it is shown by defense that the assistance animal poses a direct threat to the health or safety of others or the use of the assistance animal would result in substantial physical damage to the property of others or would substantially interfere with the reasonable enjoyment of the housing accommodation by others.

5 M.R.S. § 4582-A(3)(emphasis added). D & L, using the above language as support, first argues that the statute requires that any person who claims disability discrimination must be in actual ownership/possession of a service animal in order for the statutory prohibition to apply, and that merely hoping to eventually adopt a service animal is insufficient to fall under the statute. D & L and Sproul argue that, because Mr. Engstrom did not own a service animal at the time of his phone call with Mr. Sproul, this case presents little more than a hypothetical scenario, in which the plaintiff seeks merely an advisory opinion. *See In re Faucher*, 558 A.2d 705, 706 (Me. 1989); *Berry v. Daigle*, 322 A.2d 320, 325 (Me. 1974)("A declaratory judgment action will not be entertained where the questions propounded by the

---

⁺ As noted above, although the parties disagree about the precise words that were used during their telephone conversation, D & L and Sproul admit that Engstrom mentioned "therapy dogs" or "federally-protected service animals."

6

parties no longer present this Court with an active dispute of real interests between the litigants."). D & L and Sproul liken this situation to a scenario in which a person, with no intent of renting any apartment, calls numerous landlords in an area solely to ask whether or not they allow animals in their apartments, as if conducting a survey of the area of which landlords allow and do not allow pets in their units. D & L and Sproul support this argument further with the fact that Mr. Engstrom ultimately never ended up filing an application for an apartment at D & L.

This court disagrees with both the Defendants' characterization of Mr. Engstrom's situation, and the correct reading of the statute. Although it is true that Mr. Engstrom did not own a service animal at the time of his phone conversation with Mr. Sproul (and still does not), Mr. Engstrom was not merely conducting a random survey of landlords' pet preferences. Mr. Engstrom was instead an interested potential tenant, hoping to find suitable housing where he would be able to manage his PTSD with the assistance of a service animal. Indeed, Mr. Engstrom made clear in his deposition that his failure to procure a service animal at the time of his phone call with Mr. Sproul was precisely *because* he had yet to find suitable housing for a service animal. Engstrom Depo., 47:4-14. His phone call with Mr. Sproul discouraged him even further from finding appropriate housing for himself and a service animal.

More importantly, this court also disagrees with the Defendants' reading of the statutory language. Although the statute does prohibit any type of discrimination against a mentally or physically disabled person "who *uses* an assistance animal at the housing accommodation ...," (emphasis added), it also states that it is unlawful housing discrimination "to refuse to permit the use of an assistance animal," without any of the limiting language in the subsequent clause on which D & L and Sproul rely. *See* 5 M.R.S. § 4582-A(3). Under the Defendants' reading of the statute, a landlord would be allowed to prevent a disabled tenant from ever adopting a service

7

animal under the justification that that tenant does not yet "use[] an assistance animal." *Id.* Such a result is undoubtedly not one which the Legislature intended to allow, and this court does not read the statute to be so restrictive.

Finally, that Engstrom ultimately did not apply for housing at D & L is of little relevance. Both Maine and Federal courts interpret their respective fair housing acts broadly, "finding that discrimination in the application process and the denial of the 'opportunity to inspect, or even inquire about' rental housing for discriminatory reasons constitute 'discriminatory housing practice[s].'" *Megunticook Mgmt,* 2017 Me. Super. LEXIS 94, at *3-4 (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997); *C.f. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). Given that Mr. Sproul told Mr. Engstrom not to bother filling out an application because it would be denied, Mr. Engstrom's "unwillingness to engage in a futile gesture" is reasonable and understandable, and does not affect this court's decision.

D & L and Sproul further argue that there is no competent evidence that D & L in any way violated either 5 M.R.S. § 4581-A or § 4582-A.[5] They argues that Sproul did not know that Mr. Engstrom was disabled and did not know that Mr. Engstrom required or was considering adopting a service animal, and as a result, could not have discriminated against Mr. Engstrom on the basis of his disability. As they did in their argument above, D & L and Sproul again rely on the fact that Mr. Engstrom did not own a service animal at the time of his phone conversation with

[5] Defendant splits this argument into three separate arguments, with each argument header closely following the language of 5 M.R.S. § 4582-A(3), § 4581-A(1)(B), and § 4581-A(1)(C), respectively. Because all three relate to the sufficiency of the evidence available and whether or not D & L violated either of the two relevant statutes, this court treats all three arguments as essentially arguing the same thing.

8

Mr. Sproul. As noted above, one of the key factual disputes between the parties is what precisely was said during the telephone conversation between Mr. Engstrom and Mr. Sproul. For example, while the parties agree that the availability of service animals in the units was discussed, they disagree on the depth of the conversation, what precisely Mr. Sproul refused to consider, and what specific words were used.

It is because of this factual disagreement that this court must reject the Defendants' argument in this instance, and indeed why this court finds that summary judgment is inappropriate at this stage. Ultimately, whether or not Mr. Sproul and D & L engaged in unlawful housing discrimination can be answered only by fully understanding what Sproul and Engstrom said to one another during their phone conversation. And fully understanding what Mr. Engstrom and Mr. Sproul said to one another requires making factual determinations. This determination requires a finder of fact to "choose between competing versions of the truth." *Arrow Fastener*, 2007 ME 34, ¶ 15. Accordingly, there are genuine issues of material fact relevant to the determination of whether or not D & L and Mr. Sproul engaged in unlawful housing discrimination against Mr. Engstrom.

## CONCLUSION

The entry is:

Defendants' Motion for Summary Judgment is DENIED.

The clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: September 27, 2019

William R. Stokes
Justice, Superior Court

9